Final case is 23-4633, United States v. Belcher. Ms. Trodden, whenever you're ready. Thank you, Your Honor, and may it please the Court. I'm Erin Trodden on behalf of Joshua Belcher. At Joshua Belcher's trial, the district court abused its discretion in prohibiting him from introducing evidence of two events. His father's prior felony conviction and his arresting officer's subsequent traffic stop and false accusation of another driver, Stephan Johnson. By excluding this evidence, the district court prejudiced Mr. Belcher's ability to put on a defense. Can you move that microphone a little bit closer to you? Is that any better? We'll try that. First, with respect to Mr. Belcher's father's prior felony conviction, the district court should have allowed him to introduce this evidence as evidence relevant to why Mr. Belcher would falsely confess that the firearm was his in order to protect his father, and second, to explain Mr. Belcher's father's actions at the traffic stop. The government's evidence in its case-in-chief showed that the truck that Mr. Belcher was driving, where the firearm was found, belonged to Joshua Belcher's father, Roy Linwood Hairston, Jr. The government introduced the registration with that name on it. There was also testimony that that was his truck. Mr. Belcher, therefore, sought to introduce evidence in the form of evidence of Roy Linwood Hairston, Jr.'s prior felony conviction for marijuana distribution. In excluding this evidence, the district court essentially applied the wrong gatekeeping standard. It, without addressing Rule 104B, appears to have treated it as a fact of conditional relevance, but it applied a much more stringent standard than Rule 104B and Huddleston actually require. So, all that the district court needs to do in determining a fact of conditional relevance under Rule 104B is to determine whether there is evidence that a jury could find by a preponderance of the evidence that this conditionally relevant fact has been proved. Instead, the district court required affirmative additional evidence. Well, it seems that, though, when you look at Rule 104B, it talks about proof must be introduced sufficient to support a finding that the fact does exist. So, where is there proof that Mr. Rendleman knew about his stepfather's conviction? Mr. Belcher, Your Honor, yes. There is circumstantial evidence of that, and this court and courts generally accept that circumstantial evidence of knowledge is usually the evidence that we have of knowledge. And this court, for example, in the Grubbs case, attributed knowledge based on the relationship of people, based on the relationship of crewmen on a boat. Similarly, courts will look to knowledge based on action in conformity. Right, but doesn't your argument essentially come down to the fact, well, he was his parent. He must have known about this long ago conviction, and how is that, under the rule, evidence sufficient to support a finding that he did know? It's slightly more than that he was his parent. It's first that he was his parent, second that he was his employer, and so you have two close relationships. Third, you have the phone call that's in the body cam video where you see Mr. Belcher talking to his father on the phone and calling him dad or daddy. And you can see that there is a closeness in that relationship. There's also Mr. Belcher's statement to Officer Clark at the end where he talks about this is my dilemma. And that is consistent with him knowing about this felony conviction, knowing and trying to figure out what to do. There is sufficient evidence under the extremely low standard that the court needs to apply. This court in United States v. McLam admitted evidence of, I believe it was prior structured transactions, simply because it said the circumstantial evidence makes it plausible that the defendant engaged in these prior structured transactions. Do you accept that premise that you had to prove that Mr. Belcher knew about the felony conviction? I thought there was an argument that on the one hand it would help explain why he confessed to a gun that's not his, but that you had another argument that it would also help explain why the father has not claimed the gun, he didn't testify, he kind of ignored his son at the traffic stop, and that that's independent of the son's knowledge. Absolutely, Your Honor. And that is the second issue that the district court really didn't address at all with us and sort of glossed over. But the jury knows that this is Mr. Belcher's father's vehicle. And so a jury looking at this, given Mr. Belcher's defense position that that's not my gun, is going to think, well, if it's the owner of the truck's gun, if it's his father's gun, why doesn't his father come forward? And so explaining that in a way that's consistent with Mr. Belcher's defense theory by saying, showing that that Roy Linwood Hairston Jr. has this prior felony conviction, you're correct. Independent of whether or not Mr. Belcher knows about his father's conviction, it explains Mr. Hairston's actions. And that is also relevant to Mr. Belcher's defense. My recollection is not the best, but were those two arguments both presented to the district court as a basis for admission? Yes, they were, Your Honor. They were both argued to the district court. I don't have the J.I. sites in front of me. I apologize. But they were both argued to the district court. So I guess the other problem for you, certainly not insurmountable, is you gave us an example of a case where the district court admitted evidence, and that's certainly fine, but it's an abuse of discretion standard. So it's just not enough to say that the district court could have, should have admitted the evidence. There's got to be an abuse of discretion in not admitting the evidence. So what's your argument for why this evidentiary decision was an abuse? Well, abuse of discretion, although it's a broad standard, is not a limitless one. And among the abuses of discretion are committing an error of law or relying on erroneous factual or legal predicates. So our position here is, first of all, the district court committed an error of law in requiring this affirmative evidence of Mr. Belcher's knowledge rather than looking to whether it was plausible based on the circumstantial evidence that Mr. Belcher knew that. But separate and apart from that, in going to Judge Rushing's question, it also relied on erroneous factual predicates by simply failing to address or to recognize the relevance of Mr. Hairston, Joshua Belcher's father's response to this and how this conviction explains why Mr. Hairston would not claim the gun. Mr. Hairston isn't just someone else who's around or off the street. The fact that he is the owner of this vehicle is extremely relevant. The jury knows that. And so the jury will wonder, based on Mr. Belcher's position, why wouldn't he claim it? And so this is something that is substantial to Mr. Belcher's case. For those same reasons, jumping the gun a little bit, but because I know the government has raised this, this error was not harmless. The real problem for Mr. Belcher has, he has to be able to address these negative facts. The fact of his confession and the fact that the other person whose gun this could be isn't doing anything with it, isn't claiming it. And this evidence allows him to do that in a way that explains the government's evidence in a way that's consistent with his theory. Absent the evidence of Mr. Hairston's conviction, the jury really doesn't have a way to explain Mr. Belcher's confession or his father's actions in a way that's fully consistent with his theory. Trial counsel certainly tried to, but absent this evidence, they really were not able to sink their teeth into it in a way that the jury had tangible understanding that there was a problem with Mr. Hairston. The fact that Mr. Belcher did confess, does that somehow alter the analysis as to harmlessness? No, it doesn't, Your Honor. In fact, I think that the fact that he did confess is one of the reasons that this error is not harmless. It's because this error goes directly to addressing why he would confess and to addressing why the jury may have reasonable doubt about that confession. And so being able to address that is substantial and necessary. Well, that may go to the first theory as to why the evidence should be admitted, but then the alternative theory for the explanation for why the gun was there, that doesn't seem to me to be as compelling when you've got a confession in the record. With respect to that, the jury will still be able to say, you know, juries have to weigh all of the facts. And so they'll look at the confession, but they'll also look at where did this gun come from? The jury can then take that confession in light of the other evidence regarding Mr. Hairston's conviction. So even although I admit that it is most directly relevant to his confession, even with respect to Mr. Hairston, the government doesn't clear the harmlessness threshold. They have to show beyond a reasonable doubt that a reasonable jury, that this evidence had no impact on the jury's decision, and we submit that they don't clear that threshold. Just touching on the second issue with respect to the 2020 traffic stop of Stephon Johnson. I don't want to spend too much time on the facts, but the government's description of the video evidence really doesn't do justice to the fact that there is nothing anywhere in the video that shows the firearm in situ in the car. There are pictures of the firearm in the car, you can see the officer reaching around in the car, but you never actually see the firearm found. And so the video evidence does not foreclose Mr. Belcher's argument that there is reasonable doubt as to whether Officer Clark would have planted or planted this firearm. That said, the evidence of Officer Clark's false accusation of Stephon Johnson of resisting arrest is relevant to his character for truthfulness under Rule 608B. He falsely accuses Stephon Johnson, not once, not only when he initially begins this, I'm not sure how to describe it, but this essentially assault on Mr. Johnson. But if you watch through the remainder of the video after that, when Johnson's already in the car and the officers come and they say, what's Mr. Johnson under arrest for? And Officer Clark says, driving suspended and resisting arrest. So after he's already cooled down and he's no longer in his emotions, he's still making this false assertion that he's resisting arrest. And as the government notes in their brief, he's subsequently charged with resisting arrest. And so this false accusation is very relevant to, it's a specific instance of conduct that's very relevant to Officer Clark's truthfulness. And Officer Clark, because he is really the witness that the government depends upon to put this firearm in the vehicle, his truthfulness is very much an issue. Being able to impeach his truthfulness by cross examining him on this topic would have been a substantial piece of the defense. And the district court erred in preventing him from introducing this evidence or more properly in offering this cross examination of him. I mean, the two acts, though, are fairly different, right? Wrongly accusing somebody of resisting arrest. And then planning evidence. Those two don't seem to line up quite squarely. Well, as you recognized, Your Honor, in the Sterling case, in order for something to be 404B evidence, it does not need to be exactly the same. There need to be substantial similarities in, I think, time or place or manner of action. Now, those similarities are here. There may be some differences, but there are relevant similarities as well in terms of these being black drivers stopped for driving violations while Officer Clark is by himself without any other officers around. And those are really the relevant factors here. Whether or not it goes to the smell of marijuana or because he had a broken taillight versus because he was driving suspended, the relevant factors for this evidence go to the dynamic between these individuals. And with respect to the 404B evidence, Officer Clark's intent to use this to fabricate a charge or a piece of evidence against these individuals. I see my time is up. Thank you, Ms. Trodd. Thank you. Mr. Jones. Good morning, Your Honors. And may it please the Court, I'm Jonathan Jones, and I'm here on behalf of the United States. Unless there are specific questions from the Court, I'd like to begin with the father's prior conviction that was excluded and then move to the evidence about the subsequent traffic stop involving Mr. Johnson. Beginning first with the prior evidence, I'm sorry, the evidence that was excluded about Mr. Harrison's prior conviction. As appellant noted, the evidence that they had was simply circumstantial, and it was speculation about what somebody in that situation might know. They point to the fact that they were employers, but there's not really a reason to suspect that you would know anything about your employer's prior criminal history, the fact that they were family. It's not necessarily true that you would know about something wrong that a parent did years before you were born. And what's important here, I think, is the standard of review that's applicable. As Chief Judge Diaz noted, this is an abuse of discretion. So in this situation, the fact that the District Court disagreed about what we could speculate somebody in this situation would know does not constitute an abuse of discretion. Moving to the second part of why this… Did the District Court initially admit the evidence? Yes, so the process was that there was initially a foundation authentication issue raised. The District Court seemed initially amenable to that, ultimately changed its mind, decided that the evidence would be admitted. During a recess, did some additional research, came back and concluded that because there wasn't sufficient evidence to find that… But that wasn't an argument that was raised by the government, right? That District Court kind of figured that out on its own? The government argued that it was not relevant. The government did not specifically say that, the absence of specific evidence about his knowledge of the prior conviction. That is true, Your Honor. Nevertheless, I would say that the fact that the government argued that it was not relevant would satisfy any sort of waiver concerns that might exist here. The government argued that this evidence was not relevant, and the court explained in its ruling that it was not relevant because there was not this conditional relevancy requirement that had been met in this case. Why do we even need to get to conditional relevancy? Why is 104 implicated? I mean, do you agree that if the gun belonged to the dad, that makes it slightly more likely that the defendant didn't know about it? So, does that move the ball at all to say the gun belonged to the father who owned the truck? Your Honor, so I agree with the statement that if the gun belonged to the father, then it's likely that the son, or there's a reason to believe the son may not know about it. But that's not what the evidence would show. Right, but then the next question is, well, then would the jury wonder, would it be helpful to the jury, would it move the ball at all, to have evidence of why, if the gun belonged to the father, why the father's not saying so. Right, doesn't, I mean, isn't the rule for relevance is really, the bar is very low, and it seems like the fact that the person who the defendant claims owns the gun might have a reason not to claim it would make it relevant. Your Honor, so I disagree that it would make it relevant under 401, and while the bar for 104B is relatively low, the standard under Rule 401 is very clear. It must make a fact of consequence more probable. And the fact that Mr. Belcher's father, Mr. Harrison, has a prior conviction does not make his ownership of the gun more probable. It makes it more probable that he wouldn't claim the gun. You don't have to win your whole case with every piece of evidence. You just have to make one fact of consequence, not even an element, it doesn't have to prove an element, it has to make one fact of consequence on which other facts may rely more probable. Respectfully, Your Honor, I would disagree that it makes it more probable as explaining why he wouldn't claim the gun, because he wouldn't claim the gun if it was not his. And so what we have here, to get to any... Wasn't that the defense's whole argument in closing was, this is the father's gun, and it's because it's stolen, which the government, you know, the government told you it's stolen, and that helps explain why the father wouldn't claim the gun, because it's stolen and maybe there's a problem with having a stolen gun. But that's the whole argument, is that the jury would find that, would find it compelling to have a reason why the dad's not claiming the gun. Your Honor, that was certainly the argument in the defense's closing. And when we get to the issue of harmlessness, I think that the fact that a very similar argument was made weighs in favor of harmlessness here. But to get to your point about relevance, the only way that they structure their relevance argument is assuming first that the gun is his. And then they say that this fact is consistent with a narrative that you can tell about the gun being his. But that fact is also consistent with a narrative about the gun not being his. And if the standard... I feel like that's not the standard for relevance. It's like, could this be consistent with both sides' story, and therefore your evidence can't come in? That's not the standard. Respectfully, Your Honor, the standard is that it has to make a fact of consequence more probable. And if the fact is consistent with two narratives, equally consistent with two narratives, and only one of them supports your story, then it is not making that story more probable. Our position is that the fact that the father had a prior conviction... Well, the government all the time, and this comes in when they try to, defendants try to agree to facts so that they don't come in front of the jury, right? We want old chief as raised, and we say, well, the government's entitled to tell a whole story. The jury's going to be curious about all these other details. And so the fact that the defendant agrees to certain elements are met doesn't mean the government can't introduce evidence about them. It seems like the defendant is also entitled to tell a whole story. And facts can be relevant to telling the whole story, even if they don't, you know, only favor, you know, one outcome. So respectfully, Your Honor, I would say that there's a distinction between a relevance issue and an old chief problem. Old chief typically doesn't deal with whether something is relevant to proving something the government would have to prove. It's just whether it's still relevant if it's been stipulated to, and whether the government still needs it to tell a story. Right, but the premise is that telling the story, facts that help you tell the story are relevant. Your Honor, I agree that that is true. In the old chief situation, the underlying facts the government would use actually move the case forward in terms of making it more likely the defendant committed the crime at issue. In this case, I don't think the fact actually moves the ball forward in a way that satisfies Rule 401. So it's true that they can tell a story using that fact. I don't disagree with that, Your Honor. But I think the problem is that that fact is not critical to the story that they want to tell, and so it doesn't actually make that story more probable. And if they can't make the fact of either the false confession... Does that the relevance standard has to be critical? The relevance standard is that it has to make a fact of consequence more probable. And if this fact is merely consistent, then I don't think that it is making the fact of consequence, which is either a false confession or his father's actual possession of the gun, more probable. What we are looking at here, and we strip it down to the question as to what is relevant, is does the fact of a prior conviction of his father make it more likely, make it more probable, that his father actually owned and possessed that gun? And while you can tell a story where those two facts are together, where the fact of his prior conviction is part of a story as to his father also owning the gun, I don't think the fact of the prior conviction makes it more likely or more probable that his father actually owned the gun. And if it doesn't make that fact more probable, then it doesn't satisfy Rule 401. Well, you might have a harmlessness argument, right? That there could have been two alternative reasons why the father didn't claim his ownership of the gun. One of them was presented to the jury, but one was excluded. That's correct, Your Honor. And I do think that there's harmless error in this case. And the appellant has noted, I think, in the reply brief that there's a distinction between these arguments, whether the gun was stolen, and that's why the father would have had a problem possessing it, or whether the father had a prior conviction. And that's why it would have been problematic if he possessed it. But it's worth noting how similar those arguments are, and so how useful the defendant's actual closing argument is as a proxy for whether this is harmless. The defendant argued that Joshua Belcher, who knew that the gun was stolen, would have understood it to be problematic for his father to own the gun, to possess the gun, and so would have had an incentive to claim the gun. The jury did not buy that. The jury was out for about an hour and seven minutes and came back and convicted him on the basis of his confession in the video that they watched. The video itself is pretty clear evidence of what happened here. And I think that when we look at the harmlessness standard and we think about what a rational jury would have done on this evidence, even assuming that defense counsel had this piece of paper with Mr. Harrison's prior conviction and they could have argued, in addition to the gun being stolen, Mr. Belcher may have wanted to protect his father from the fact that his father was not allowed to possess a gun. So he had two reasons for wanting to... There were two bases why his father would be in trouble if he owned that particular gun or possessed that particular gun. I don't think that that moves the needle enough to think that this error was actually harmful and would have impacted the jury's consideration. We have a very useful proxy of how the jury thought about this case and what a rational jury would have done, because they had an argument about why Josh would have lied to protect his father from legal culpability and legal liability, and they were not persuaded and they didn't buy it. They had specific evidence that the truck was the father's. They had specific evidence that the gun was stolen and that Joshua Belcher knew that. They had as much evidence for that as they would have needed to have for the question about whether he was protecting him from possessing a gun as a felon, and the jury did not find that compelling. As a result, what we have here is a situation where this error was not harmful. So you're... But that argument relies on the premise that somehow the two arguments are equally persuasive or not, right? One can be more persuasive than the other to a jury. Your Honor, I would say it relies on the fact that the two arguments are very, very similar. In both situations, you have an argument that Mr. Belcher had an incentive to falsely confess in order to protect his father from legal liability, and the fact that those two arguments are very similar, and I acknowledge that there are distinctions there, but the fact that they are so very similar gives us a very useful proxy for determining what a rational jury would do, because we know what a rational jury did in this context with a very similar argument. So given that, in addition to the evidence that we have, which is, again, a specific confession on tape and an entire traffic stop on video where the jury can evaluate what the officer did, they can evaluate what Mr. Belcher did, they can evaluate the entirety of their interaction and whether something seems weird or strange or problematic with that confession. And after watching all of that and considering that, the jury found that Mr. Belcher was guilty, and they were not persuaded by this idea that he would have been incentivized to falsely confess to protect his father. Since that is the bucket of evidence that we have about this case and what we've seen that the jury was going to do with that evidence, then I think it's not difficult to conclude that the failure to include this prior certificate, this prior piece of paper that shows the conviction, would not have changed the jury's analysis here. Had defense counsel been able to make the very similar argument, although distinct with a very similar argument, that Mr. Belcher had an incentive to protect his father, the jury, on the strength of the evidence, and for the same reasons that they found the stolen gun argument not to work, they would have found that argument not to work and would have found that Mr. Belcher was guilty of possessing the firearm. Your Honors, moving briefly to the question about the, unless there are additional questions about the exclusion of the father's conviction, I want to move to the question about the exclusion of the evidence related to the traffic stop with Stephon Johnson that occurred a year later. There's a handful of bases that the appellant has raised for why this could come in, and I think none of those satisfy the relevant standards, and as a result, the district court's decision was correct. Beginning first with 404B, I think the biggest problem here is that the way that the appellant has phrased this is as modus operandi evidence and that they want to bring it in to show a pattern of behavior on Officer Clark's part. I think the way that they have framed this and tried to bring it in very clearly implicates the idea of a propensity or a character argument. They have suggested that there's a pattern of how Officer Clark behaves with young black men, and because he behaved in a certain way on one occasion, there's a likelihood that he would behave the same way on a subsequent occasion. That is very clearly impermissible under Rule 404B, and so would not be permissible for that reason. In addition, they've suggested that they could bring it in to show that Officer Clark could have planted the gun. I think there is no evidence in the case to suggest that he planted the gun, and I think more importantly, the subsequent traffic stop with Mr. Johnson does not show a likelihood or a proclivity or an intent to plant evidence. The fact that somebody gets upset, loses their temper, loses control, and as part of that, accuses somebody of resisting arrest and charges them with resisting arrest is very distinct from deliberately premeditating planting evidence on somebody. The video here, there's a suggestion that the video does not exculpate Officer Clark because you can't fully see him pulling the gun out from under the seat. But I think when we look at the entire context of the video, it's difficult to find any basis for concluding that planting evidence could have occurred here. For example, before he pulls the gun out, you can very clearly see on the video, he can put his phone down and take a photograph, and those photographs are in evidence. That's JA 428 and 429, and you can see the gun nestled under the seat there. When he first notices the gun, you see him sort of briefly lean over and look under the seat, and at that point, Josh Belcher is looking right at him. He's standing a few feet away and looking at him. Shortly after he handcuffs Mr. Belcher, another officer arrives on the scene. So the entire context of the video, this idea that he would have had a stolen gun on him, ready to plant on whoever he happened to pull over, just doesn't hold any water. And the idea that because a year later, he lost control, he lost emotional control during a traffic stop and engaged in misconduct, which we acknowledge is what happened, does not suggest that a year earlier, he was going to be ready to plant a gun on whoever he happened to pull over. And so the video here, I think, clearly rebutts any suggestion that he was liable to plant evidence. But more importantly, the subsequent traffic stop with Mr. Johnson does not suggest that he was likely to plant evidence. So one of the concerns with allowing that kind of evidence is that it turns the case into a mini-trial on something that is, at best, tangentially related. And I get that, but credibility of a witness, truthfulness, reputation for truthfulness, that seems to me to be always relevant. And there's a distinction between allowing a defendant to bring in extrinsic evidence of 404B evidence and simply allowing a defense lawyer to cross-examine a witness with respect to specific incidences relating to truthfulness. So why wasn't it an abuse of discretion not to allow at least a questioning? So, Your Honor, turning to Rule 608 and the specific instances of untruthfulness, so the issue here is, I think, that the Johnson traffic stop does not actually qualify under Rule 608 as an incident that shows his character for truthfulness or untruthfulness. And the reason is that it is not appropriate to take a small slice of an entire situation out of context and then say that that slice is representative of the person's character. In this situation, if you watch the video of the traffic stop of Mr. Johnson, there's a situation where Officer Clark is about to arrest him. Mr. Johnson pulls away, and that's when Mr. Clark clearly loses his temper. He loses control, and he starts shouting at him, giving him different commands. Mr. Johnson attempts to comply but does not fully comply. And so in the heat of the moment there, Officer Clark says, you're resisting arrest, and then afterwards follows through and charges him with resisting arrest. I don't think that the fact that Officer Clark lost control in that moment, was interpreting what was happening as him resisting arrest because he was not complying, because he was pulling away when he was trying to arrest him, shows that Officer Clark has evinced a character for dishonesty. And I think that's particularly true when the entire context of the situation and the fact that afterward he was disciplined, he acknowledged his mistake and what happened. Your colleague on the other side says that maybe that's so, that heat of passion response might be excused or at least understood, but that he later repeated the same lie when he wasn't under that apprehension or heat of passion. I think that the best way to interpret what happened is watching the video. He interpreted Mr. Johnson's conduct as qualifying as resisting arrest because he was so upset, and that interpretation stayed with him during the course of the later proceedings. Well, that's one theory of the evidence, but that doesn't suggest or mean that the defense couldn't question him about it. Your Honor, I think the fact that that's one theory of the evidence, combined with the 403 analysis that would be a part of this and that the district court did, I think would pretty seriously weigh against bringing this in. So, Your Honor mentioned the concern with many trials and that maybe that's ameliorated if all we have are some examinations on, some questions on cross-examination. The problem, I think, is that if you just throw this out in front of the jury, there's a real risk that they start to fixate on, you know, accusations and questions about police brutality, about police misconduct, and they make decisions based on emotions rather than facts. And so when we have alternative ways to look at the scenario, one of which maybe suggests dishonesty, another way does not suggest dishonesty, and we have 403 concerns about how prejudicial this is and how much it could distract a jury, then it is entirely appropriate for a court to say, I'm going to exclude that. It is certainly not an abuse of discretion. And again, I will, as we pointed out in our brief, not only is that an abuse of discretion, but this court has noted that it is a rare occurrence for this court to reverse a district court's decision under Rule 403. And in addition to that, I want to highlight how harmlessness would work under Rule 608. So it is one thing to say that introducing the traffic stop may have had a significant impact on the trial and the ultimate outcome here, and we disagree with that, and we push back on the fact that this would be a harmful error. But that argument is even stronger if all we're looking at is Rule 608 and all that could happen is a question. If all of that was excluded at the end of the day were one or two questions about a subsequent traffic stop, we don't think that that is likely to have changed the jury's decision-making here, particularly since what they had was an entire video that they could watch, the context of the video that pretty clearly suggested the gun was not planted, the gun was actually in the truck when Mr. Belcher was arrested, and then his ultimate admission and confession to the gun at the end of the video. Given that evidence, the fact that Officer Clark may have been asked one or two questions about a subsequent traffic stop would not likely have changed the jury's ultimate outcome in this case. And so we think that particularly if you're looking under the rubric of 608, the harmlessness argument is very, very strong here. Your Honor, I see that my time is about to expire. I want to be sure I answer any questions that the panel has before I sit down. Thank you. Thank you, Your Honor. Thank you, Your Honor. The bar for relevance is low. The evidence must only have a plus value, and for evidence to be relevant, it either needs to make a fact of consequence more or less significant. Here, the evidence of Mr. Harrison's prior conviction makes the government's facts less significant. That is its value to Mr. Belcher, is it takes this confession and it takes Mr. Harrison's actions, which, absent this conviction, really are only susceptible to the government's explanation, and neutralizes them by providing an explanation for them that is also consistent with Mr. Belcher's theory of the case, that the gun isn't his. And so for that reason, it is plainly relevant. It does make fact of significance the government's position less likely by explaining it in a way consistent with Mr. Belcher's position. With respect to the government's harmlessness argument, the fact that the jury didn't accept Mr. Belcher's closing arguments and arguments about this, I think should not be taken as a metric that the jury would not have accepted the arguments that he would have made had he had the evidence that he sought to introduce. The government basically analogizes by saying, having hamstrung him, the district court, then we should believe that the jury would treat him as hamstrung if this had been able to be introduced. But in fact, had he been able to introduce this evidence of Mr. Belcher's, excuse me, of Mr. Hairston's convictions, that would have gone to the jury's reasonable doubt because it would have addressed these two bad facts for him. With respect to the traffic stop, it's not propensity evidence. With respect to the 404B evidence, it really goes to Officer Clark's intent. And it's his intent to fabricate an offense. This court has recognized in, I believe it was Queen, but the value of willfulness as evidence of subsequent conduct. And so what Mr. Belcher is seeking to do by introducing the rule 404, this evidence of the traffic stop as rule 404B evidence, is not to show Officer Clark's actions in conformity therewith, but to show Officer Clark's intent. The fact that this traffic stop happened subsequent to Mr. Belcher's stop, of course, is of no moment. This court has recognized that subsequent conduct can also be admissible as 404B evidence. With respect to, the government argues that the evidence of Officer Clark's actions with Stephon Johnson really only indicate a loss of emotional control. But as the court has noted, and as the video shows, it's not simply that one occasion. On multiple occasions, he accuses Stephon Johnson after the fact of fabricating evidence. And he recognizes this. He recognizes this in his subsequent discipline, where he states to the disciplinary officers that he realized he'd gotten himself in trouble. He says, quote, he was compliant. He had complied with going to his knees. I had said go to his knees. He was already on his knees. So there's really no factual issue about this. Officer Clark recognizes that he subsequently recognizes that Stephon Johnson was compliant and he wasn't resisting arrest. The district court recognizes that he wasn't resisting arrest. The government recognizes that he wasn't resisting arrest. At page 36 of their opposition brief, they say that Officer Clark, quote, wrongly accused Mr. Johnson of resisting arrest. This is obviously something that is relevant to Officer Clark's credibility. And the inability to be able to explore this was deeply prejudicial to Mr. Belcher's case, especially given the fact that notwithstanding the government's arguments about what you think you can see, if you actually look at the video, nowhere is the gun shown in situ, and you can't tell where he gets the gun from when he pulls it out. Now, the government argues that all of this is speculation or that there's no basis for this, but that's not the defendant's issue. All we have to do is help explain to the jury why there is a basis for reasonable doubt. And all of this ultimately goes to that basis for reasonable doubt. And the government can't show, it can't meet the high burden of showing harmlessness, of showing beyond a reasonable doubt that this evidence, had it been in, would not have impacted the jury's decision. Thank you, Your Honor. Thank you, Mr. Arden. I want to thank both counsel for their excellent arguments in this case. We'll come down and greet you and adjourn until tomorrow. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court. Thank you for correcting me. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Albert Diaz, Allison J. Rushing, Barbara Milano Keenan